# EXHIBIT 1

US00D444097S

## United States Design Patent

Cutshall

(10) Patent No.:     US D444,097 S

(45) Date of Patent:     **  Jun. 26, 2001

(54) CROWN OF A ROUND FACETTED
GEMSTONE

(76) Inventor:  Edwin Bruce Cutshall, P.O. Box
32054, Hillsboro, VA (US) 20134

(**) Term:     14 Years

(21) Appl. No.: 29/129,713

(22) Filed:     Sep. 18, 2000

(51) LOC (7) Cl. ............................... 11-01
(52) U.S. Cl. .................................... D11/90
(58) Field of Search .............. D11/1, 2, 7, 26–29,
D11/35–36, 40–43, 79–92; 63/1.11, 15–15.1,
26–28

(56)         References Cited

U.S. PATENT DOCUMENTS

D. 36,259  *  8/1903  Cooper ........................... D11/90

D. 286,388  *  10/1986  Ishida ........................... D11/90
2,738,097  *  1/1974  Elbe ............................... 63/32

* cited by examiner

Primary Examiner—Ralf Seifert

(57)            CLAIM

The ornamental design for a crown of a round facetted gemstone, as shown and described.

DESCRIPTION

FIG. 1 is a top plan view of a crown of a round facetted gemstone showing my new design; and,

FIG. 2 is a side view thereof, all sides are identical/symmetrical. The pavilion is shown in broken lines for illustrative purposes only and forms no part of the claimed design.

1 Claim, 1 Drawing Sheet



**U.S. Patent**                Jun. 26, 2001          US D444,097 S



Fig. 1



Fig. 2



A - 36½° @ 93-3, 9-15...

B - 30½° @ 0, 12, 24, ...

C - 21½° @ 91-5, 7-13,
           19-29, ...

D - 17° @ 0, 12, 24...

Fig. 1

© E. Blackhall

Fig. 2

# EXHIBIT 2

## PATENT LICENSE AGREEMENT

THIS AGREEMENT made and dated as of the ___28th___ day of
___May___, 2002 by and between Edwin B. Cutshall (Licensor) and
Shama Gems, Inc., a New York corporation doing business as Gem
International by Parag Shah (Licensee).

### RECITALS

A.    Licensor is the owner by assignment of United States
Patent number US D444,097S covering the design of diamonds,
precious colored gemstones and semi-precious colored gemstones.

B.    Licensor and Licensee now desire and intend to provide
for the licensing by Licensor to Licensee of the right to sell
diamonds and diamonds for diamond jewelry only as arising under
the Patent referenced above, subject to the terms and conditions
of this Agreement and hereinafter referred to as Patent.

W I T N E S S E T H:

NOW, THEREFORE, in consideration of the promises and the
mutual covenants contained herein, the parties hereto agree as
follows:

### ARTICLE 1 - DEFINITIONS

For the purposes of this Agreement, the following words and
phrases shall have the following meanings:

1.1   "Licensee" shall mean Shama Gems, Inc. Gem
International, Parag Shah, and any permitted assign(s) thereof.

1.2   "Licensor" shall mean Edwin B. Cutshall, his heirs,
personal representatives, and assigns.

1.3   "Patent Rights" shall mean the following described
property of Edwin B. Cutshall:

(a)   United States Patent No. US D444,097S, limited to
diamonds and diamond jewelry only. No license is granted for
Patent Rights for precious colored gemstones and semi-precious
colored gemstones. A copy of such Patent is attached hereto as
Exhibit "A".

(b)   Claims of United States and foreign continuation-
in-part applications and of the resulting patents, which are
directed to the subject matter specifically described in said
Patent.

(c)   Claims of all foreign patent applications, and of
the resulting patents, which are directed to subject matter
specifically described in such Patent; and

(d)  Any reissues of such Patent, as limited to diamonds, as may be agreed upon.

1.4  A "Licensed Product" shall mean any diamond or diamond jewelry thereof that:

(a)  is covered in whole or in part by an issued, unexpired claim or a pending claim contained in the Patent Rights in the country in which any such product or part thereof is made, used, or sold, which claim or pending claim shall not have been declared invalid or unenforceable by a court of competent jurisdiction; or

(b)  is manufactured by using a process or is employed to practice a process that is covered in whole or in part by an issued, unexpired claim or a pending claim contained in the Patent Rights in the country in which any Licensed Process is used or in which such product or part thereof is used or sold, which claim or pending claim shall not have been declared invalid or unenforceable by a court of competent jurisdiction.

1.5  A "Licensed Process" shall mean any process that is covered in whole or in part by an issued, unexpired claim or pending claim contained in the Patent Rights, which claim or pending claim shall not have been declared invalid or unenforceable by a court of competent jurisdiction.

1.6  "Licensed System" shall mean a system incorporating one or more Licensed Products or Licensed Processes.

1.7  "Territory" shall mean world-wide.

1.8  "Field of Use" shall mean all fields of use for diamond and diamond jewelry only.

1.9  "Sublicensee" shall mean any person or entity to whom Licensee shall have sublicensed all or any portion of the rights of Licensee set forth in Article 2 hereof.

1.10 "Effective Date" shall mean the date of the execution of this Agreement.

## ARTICLE 2 - GRANT

2.1  Licensor hereby grants to Licensee the right and license, together with the right to sublicense, in the Territory for the Field of Use: (a) to practice under the Patent Rights and (b) to the extent not prohibited by other patents until the expiration date of the Patent Rights (unless this Agreement shall

2

be sooner terminated according to the terms hereof), to make, have made, use, lease, sell, advertise, market, distribute, export, and import Licensed Products, Licensed Processes, and Licensed Systems, either directly by Licensee or through one or more Sublicensees or third-party distributors, as approved by Licensor.  This license is limited to diamonds only.  No license is hereby granted for semi-precious or precious colored gemstones.

2.2  Licensor may grant a license to make, have made, use, lease, sell, advertise, market, distribute, export, or import Licensed Products, Licensed Processes, and Licensed Systems in the Territory for the Field of Use to Hunt Country Jewelers, Inc. or any other entity in which Edwin B. Cutshall is the principal or majority owner, during the period of time commencing with the Effective Date of this Agreement and terminating at the end of the term or terms for which any Patent Rights are issued.

2.3  Licensee shall have the right to enter into sublicensing agreements for the rights, privileges, and licenses granted hereunder during the term of this Agreement only with the express prior written consent of the Licensor which consent shall not be unreasonably withheld. Upon any termination of this Agreement, Sublicensees' rights shall also terminate, subject to Paragraph 8.4 hereof.

2.4  Licensee agrees to forward to Licensor a copy of any and all sublicense agreements promptly upon execution by the parties.

2.5  Licensee shall not receive from Sublicensees anything of value in lieu of cash payments in consideration for any sublicense under this Agreement, without the express prior written consent of Licensor, which consent shall not be unreasonably withheld.

## ARTICLE 3 - ROYALTIES

3.1  For the rights, privileges, and license granted hereunder, Licensee shall make payments to Licensor in the manner hereinafter provided to the end of the term of the Patent Rights or until this Agreement shall be terminated.

3.2  All payments due hereunder shall be paid in full, without deduction of taxes or other fees that may be imposed by any government and that shall be paid by Licensee.

3.3  Royalty payments shall be paid in United States dollars at P.O. Box 32054, Hillsboro, Virginia 20134, or at such other

3

place as Licensor may reasonably designate consistent with the laws and regulations controlling in any foreign country.

3.4  Royalty payments shall be made by Licensee to Licensor in the amount of Fifty Dollars ($50.00) per carat for all diamonds sold pursuant to the Patent.

## ARTICLE 4 - REPORTS AND RECORDS

4.1  Schedule of Payment and Royalty Report.  Royalties shall be paid on a quarterly basis within fourteen (14) days after the end of each quarter in which the applicable sales are made. A royalty report shall accompany each royalty payment, setting forth without limitation at least the following information: (1) the number of Licensed Product(s) cut, shipped or transferred by Licensee in any way; (2) the number of copies of the Licensed Product used solely for testing, marketing, development, or demonstration purposes; (3) identification of each new Sublicensee of Licensee by use of a unique license number and statement of the name and business address of each new Sublicensee; (4) identification of each stone cut with a numbering system established by Licensor and providing such numbers to Licensor; (5) and the identification of each stone sold with a numbering system established by Licensor and providing such numbers to Licensor.

4.2  Accounting.  Licensee shall maintain an accurate and complete record of all data relating to sales and cuts of Licensed Products necessary for the computation of royalties payable to Licensor hereunder. Licensor shall have the right of access, upon not less than two weeks (2) written notice, during reasonable business hours, to such of Licensee's records as are necessary to verify the accuracy of the royalty payments required to be made under this Agreement. Licensor acknowledges that the information contained in such records is sensitive and proprietary and agrees to maintain all such records as confidential and to reveal their contents to no one without the prior written consent of the Licensee.

4.3  With each report submitted, Licensee shall pay to Licensor the royalties due and payable under this Agreement. If no royalties shall be due, Licensee shall so report.

## ARTICLE 5 - PATENT PROSECUTION

5.1  Licensor shall maintain the Patent Rights during the term of this Agreement. The prosecution, filing, and maintenance of all Patent Rights patents and applications shall be the primary responsibility of Licensor.

4

5.2  Payment of all fees and costs relating to the filing, prosecution, and maintenance of the Patent Rights and incurred after the Effective Date shall be the responsibility of Licensor.

5.3 Licensee acknowledges that all applicable patent rights, copyrights, trade secret rights and other proprietary rights related to the Patent Rights and any modifications or enhancements thereto made by Licensor whether or not made at License's request, are and shall belong to and remain the property of Licensor.

## ARTICLE 6 - INFRINGEMENT

6.1  <u>Prosecution of Infringement</u>.  In the event of an alleged infringement by a third party of any right, title, or interest of Licensor, Licensor may, prosecute such infringement at Licensor's sole expense, seeking both to enjoin the continuation of the infringement and to obtain damages incurred by the Licensor and Licensee, as a result of such infringement. However in any event, Licensee shall expeditiously and vigorously pursue such prosecution and be required to bring suit or continue any suit already brought and to control the conduct thereof against any alleged infringer and to join Licensor as party plaintiff in any such suit. Licensee agrees to reimburse Licensor for all costs and fees incurred in such matter by Licensor that are not reimbursed by the defendant(s) therein.  Any fees due to Licensee, by Licensor, may be offset from royalty fees provided herein.  Any damages or awards payable to Licensee as a result of such prosecution shall remain the property of Licensee, except to the extent a royalty fee is due to Licensor for any carats sold in an award.

6.2  In the event that a declaratory judgment action alleging invalidity or non-infringement of any of the Patent Rights shall be brought, Licensee, shall join in the defense of the action or defend the action at its own expense.

6.3  In any infringement suit as either party may institute to enforce the Patent Rights pursuant to this Agreement, the other party hereto shall, at the request and expense of the party initiating such suit, cooperate in all respects and, to the extent possible, have its employees testify when requested and make available relevant records, papers, information, samples, specimens, and the like.

6.4  If the Licensor grants any license in violation of this Agreement, Licensor shall be liable for any and all damages, consequentially or otherwise, sustained by Licensee.

5

## ARTICLE 7 - INDEMNIFICATION, REPRESENTATIONS, AND WARRANTIES

7.1  Licensee shall at all times during the term of this Agreement and thereafter indemnify, defend, and hold Licensor, its trustees, directors, officers, employees, and affiliates harmless against all claims, proceedings, demands, and liabilities of any kind whatsoever, including legal expenses and reasonable attorney fees, arising out of the death of or injury to any person or persons or out of any damage to property, or resulting from the production, cutting, manufacture, sale, use, lease, consumption, or advertisement of the Licensed Product(s), the Licensed Process(es), or the Licensed Systems or arising from any obligation of Licensee hereunder, excepting only claims that the Patent Rights infringe third-party rights.

7.2  Licensor represents, warrants, covenants, and agrees as follows:

(a)  Licensor is the owner of the Patent Rights and has the full right, power, and authority to enter into this Agreement and to grant the right, title, and interest granted herein;

(b)  Licensor previously transferred, conveyed, assigned, or encumbered the Patent Rights to Hunt Country Jewelers, Inc.  Hunt Country Jewelers, Inc. hereby joins in this Agreement to covenant and agree it will not further transfer and assign the license granted to it.

(c)  to the best of Licensor's knowledge, none of the Patent Rights infringe upon any rights owned or possessed by any third party.

## ARTICLE 8 - TERM AND TERMINATION

8.1 Unless otherwise provided herein by specific provisions or terminated sooner as provided herein, this Agreement shall remain in force for the same term of years from the effective date hereof until the termination of the Patent, being June 26, 2015. Upon reissue of such Patent, the Licensor and Licensee shall re-evaluate and re-negotiate this Agreement.

8.2  If Licensee shall cease to carry on its business for a period of 60 consecutive days, or in the event the Licensee shall fail to sell at least fifty (50) carats of diamonds during any six (6) month period after the first year of the contract term, or as otherwise mutually agreed, this Agreement shall terminate.

In lieu of termination for failure to sell at least fifty (50) carats of diamonds during any six (6) month period, the

6

Licensor shall grant to Licensee up to, but not to exceed, a total of four (4) six (6) month license periods, whereby the Licensee shall pay to the Licensor for each of said six (6) month period, the sum of $2,500 by cash or cashiers check in U. S. Dollars.

8.3  Should Licensee fail to make any payment whatsoever due and payable to Licensor hereunder, and such failure shall not have been cured within five (5) days after written notice thereof to the Licensee, Licensor shall have the right to terminate this Agreement. Upon the expiration of the five (5) day period, if Licensee shall not have made all such payments to Licensor, the rights, privileges, and license granted hereunder shall automatically terminate.

8.4  Licensee shall have the right to terminate this Agreement at any time upon sixty (60) days' notice to Licensee and upon payment of all amounts due Licensor through the effective date of the termination.

8.5  Upon termination of this Agreement for any reason, nothing herein shall be construed to release either party from any obligation that matured before the effective date of such termination; Licensee and any Sublicensee thereof may, however, after the effective date of such termination, sell all Licensed Products in their possession and complete Licensed Products in the process of manufacture at the time of such termination and sell the same, provided that Licensee shall make the royalty payments required hereunder with respect to those sales.

## ARTICLE 9 - PAYMENTS, NOTICES, AND OTHER COMMUNICATIONS

Any payment, notice, or other communication pursuant to this Agreement shall be sufficiently made or given on the date of mailing if sent to such party by certified first class mail, postage prepaid, addressed to it at its address below or as it shall designate by written notice given to the other party:

In the case of Licensor:    Edwin B. Cutshall
                            P.O. Box 32054
                            Hillsboro, Virginia 20134

In the case of Licensee:    Shama Gems, Inc.
                            15 West 47th Street, Suite 905
                            New York, New York  10036

## ARTICLE 10 - MISCELLANEOUS PROVISIONS

10.1 This Agreement shall be construed, governed, interpreted, and applied in accordance with the laws of the

7

Commonwealth of Virginia, U.S.A., except that questions affecting the construction and effect of any patent shall be determined by the law of the country in which the patent was granted.

10.2 The parties hereto acknowledge that this Agreement sets forth the entire Agreement and understanding of the parties hereto as to the subject matter hereof and shall not be subject to any change or modification except by the execution of a written instrument subscribed to by the parties hereto.

10.3 The provisions of this Agreement are several, and in the event that any provisions of this Agreement shall be determined to be invalid or unenforceable under any controlling body of law, such invalidity or non-enforceability shall not in any way affect the validity or enforceability of the remaining provisions hereof.

10.4 Licensee agrees to mark the Licensed Products sold, cut and produced in the United States with all applicable United States patent numbers and the sequential numbers as provided by Licensor. All Licensed Products sold, cut or produced in other countries shall be marked in such a manner as to conform with the patent laws and practice of the country of production or sale and with the sequential numbers as provided by Licensor.

10.5 The failure of either party to assert a right hereunder or to insist upon compliance with any term of condition of this Agreement shall not constitute a waiver of that right or excuse a similar subsequent failure to perform any such term or condition by the other party.

**IN WITNESS WHEREOF**, the parties have duly executed this Agreement the day and year set forth below.

Shama Gems, Inc.,
doing business as Gem International

By Parag Shah

_____
LICENSEE

Date ___5/28/02___

Edwin B. Cutshall


_____
LICENSOR

Date ___6/11/02___

Hunt Country Jewelers, Inc.

By: _____
_____
Title

8

Exhibit "A"



US00D444097S

(12) **United States Design Patent**     (10) Patent No.:     **US D444,097 S**

Cutshall     (45) Date of Patent:     ** **Jun. 26, 2001**

(54) **CROWN OF A ROUND FACETTED GEMSTONE**

(76) Inventor: **Edwin Bruce Cutshall**, P.O. Box 32054, Hillsboro, VA (US) 20134

(**) Term: **14 Years**

(21) Appl. No.: **29/129,713**

(22) Filed: **Sep. 18, 2000**

(51) LOC (7) Cl. ......................................... **11-01**
(52) U.S. Cl. ........................................... **D11/90**
(58) Field of Search ................ D11/1, 2, 7, 26–29, D11/35–36, 40–43, 79–92; 63/1.11, 15–15.1, 26–28

(56) **References Cited**

U.S. PATENT DOCUMENTS

D. 36,350 * 8/1903 Cooper .............................. D11/90

| | | |
|---|---|---|
| D. 286,388 | 10/1986 | Ishizu .............................. D11/90 |
| 3,738,097 | 6/1974 | Elbe .............................. 63/32 |

* cited by examiner

*Primary Examiner*—Ralf Seifert

(57) **CLAIM**

The ornamental design for a crown of a round facetted gemstone, as shown and described.

**DESCRIPTION**

FIG. 1 is a top plan view of a crown of a round facetted gemstone showing my new design; and,

FIG. 2 is a side view thereof, all sides are identical/symmetrical. The pavilion is shown in broken lines for illustrative purposes only and forms no part of the claimed design.

**1 Claim, 1 Drawing Sheet**



**U.S. Patent**          Jun. 26, 2001          US D444,097 S



Fig. 1



Fig. 2



A- 36½° @ 93-B, 9-15...

B - 30½° @ 0, 12, 24, ...

C - 21½° @ 1-5, 7-13,
        19-29, ...

D - 17° @ 0, 12, 24-

0
96

A

A

B

C

C

D

Fig. 1

© E. Blackhall

C D C

B

A     A

Fig. 2

# EXHIBIT 3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SHAMA GEMS, INC. doing business as GEM
INTERNATIONAL,

                   Plaintiff,

       -against-

R & R GROSBARD, INC., ROBERT
GROSBARD, RICHARD GROSBARD,
and RITESH SHAH,

               Defendants.

:

:

:      Case No.

:

:     **DECLARATION OF**
      **EDWIN B. CUTSHALL**
:

:

---

COUNY OF LOUDOUN   )
                  : ss.:
STATE OF VIRGINIA    )

     EDWIN B. CUTSHALL declares as follows:

     1.     I am the inventor and patent holder of United States Design Patent No. D444,097

S, issued on June 26, 2001 (hereinafter "the `097 Patent"). I submit this declaration in support of

plaintiff's application for a preliminary injunction with temporary restraints.

     2.     By way of background, I earned a Bachelor of Arts in Chemistry from SUNY

College at Oneonta in 1975 and thereafter graduated from the Gemological Institute of America,

also in 1975. Since that time, I have taught gemology at several colleges, while serving as owner

of Hunt Country Jewelers, Inc. of Hillsboro, Virginia, since 1977.

     3.     I am presently the inventor and patent holder of three (3) design patents, including

the '097 Patent, registered with the United States Patent and Trademark Office, and my jewelry

designs have garnered both national and international awards.

     4.     I spent weeks conceiving and ultimately configuring the '097 Patent, based on

trial and error methods and my then 25-year experience in gemstone design. The patent is truly

unique insofar as the ordinary round cut diamond has 58 facets, whereas the '097 Patent is characterized by 16 additional facets to the crown, resulting in added scintillation, brilliance and dispersion.

5.     I have compared the design of the *Jubilant Crown*® diamond, as cut to the '097 Patent's specifications, with that of the defendants' Remy diamond and, based on my considerable experience as a gemologist, I am of the opinion that it would have been impossible for the defendants to construct the so-called Remy diamond without first intentionally replicating, and therefore infringing upon, the '097 Patent which forms the basis for the *Jubilant Crown*® diamond.

6.     The only valid licensing agreement relating to the manufacture, marketing and sale of the '097 Patent is, and has been to date, between plaintiff Shama Gems, Inc., doing business as Gem International, and myself.

7.     I have never entered into a licensing agreement with any of the defendants, nor have any of the defendants ever been authorized to utilize the '097 patent.

8.     The *Jubilant Crown*® name is my registered trademark and over the last six years the '097 Patent's style of cut, as applied to diamonds, has been represented to the public and the trade industry as the *Jubilant Crown*® *Diamond* by Gem International. As with the '097 Patent, the registered name *Jubilant Crown*, to date, has not been used, wholesale to the trade industry, by any person or entity other than Gem International.

I declare under penalty of perjury that the foregoing is true and correct. Executed on the 26th day of September, 2007.

EDWIN B. CUTSHALL

- 2 -